OTIS S. YOUNG

*v.*

WALTER H. LEWIS, JR., *et. al.*

(No. 10516)

Submitted April 22, 1953. Decided June 16, 1953.

*Selden S. McNeer, Samuel D. Littlepage, Selden S. Mc-Neer, Jr., Somerville, Hyer and Littlepage, Campbell, McNeer and Woods,* for appellants.

*Goodwin and Goodwin, Robert B. Goodwin, J. G. F. Johnson, Carroll W. Casto,* for appellee.

LOVINS, JUDGE:

Otis S. Young, asserting title to a tract of land containing approximately 168 acres under the will of his grandfather, Otis F. Stribling, brought this suit in the Circuit Court of Mason County, West Virginia, against Walter H. Lewis, Jr., Dorthy Lewis Polan, Lake Polan, Jr., Rose Nibert and Harry Nibert.

Defendants, Walter H. Lewis, Jr., Dorthy Lewis Polan and Lake Polan, Jr., Rose Nibert and Harry Nibert demurred to the bill of complaint.

We do not think it is necessary to state the grounds of the three demurrers. It suffices to say that the de-

murrers to the bill of complaint were overruled, and the defendant required to answer the bill within 15 days from the date of entry of the decree overruling the demurrers.

The defendants Walter H. Lewis, Jr., Dorthy Lewis Polan and Lake Polan, Jr., declined to file an answer to the bill of complaint, and thereupon, the trial chancellor entered the final decree herein complained of. It will be hereinafter noted that the plaintiffs abandoned any claim to the lands carved out of the 168 acre tract and conveyed to Rose Nibert and the Board of Education of Hannan District.

The trial court decreed that title to the tract of land is vested in the plaintiffs, cancelled certain deeds and decrees in the defendants' chain of title and adjudged them to be clouds upon the title of plaintiffs. From that decree, defendants Walter H. Lewis, Jr., Dorthy Lewis Polan and Lake Polan, Jr. prosecute this appeal.

Otis F. Stribling acquired an undivided one-half interest in the tract of land from H. M. Roup and the other one-half undivided interest from W. H. Sayre, by deeds of conveyance dated, respectively, the 22nd day of December, 1894, and October 8, 1895.

Otis F. Stribling owned the land at the time of his death, which occurred in the month of June, 1912. He died testate. His will contained seven paragraphs designated as "items".

Though we consider the entire will of Otis F. Stribling in determining his intention, we think it suffices to quote the *fourth item* of his will, which reads as follows:

> "I give and devise to my son, Mathew W. Stribling, the farm *adjoing* my home farm on the lower side, containing one hundred and sixty acres, more or less, and being the same premises I purchased of the *Rouh* Heirs during the time of his natural life, with remainder in fee simple to his children if any he leaves, and in case my

said son should leave no children then the remainder estate shall descend to my heirs."

As will hereinafter appear, the *fourth item* of the will is the material and controlling part of the will.

By deed bearing date the 14th day of August, 1912, the widow of Otis F. Stribling, Catharine S. Young, his daughter, James S. Young, her husband, and William N. Stribling, the other son of Otis F. Stribling, executed a deed conveying all their estate in the 168 acre tract of land to Mathew W. Stribling. It is to be noted that the certificate of acknowledgment of such deed by Virginia C. Stribling and Catharine S. Young is dated three days prior to the date of the deed.

Mathew W. Stribling and Mary Stribling, his wife, conveyed a small tract of one acre, out of the 168 acre tract, to the Board of Education of Hannan District, Mason County, West Virginia, and another one acre tract of land, out of the 168 acre tract, to Rose Nibert.

A suit in chancery was instituted in the Circuit Court of Mason County, wherein H. A. Hayman sued on behalf of herself and all other lien creditors of Mathew W. Stribling against Mathew W. Stribling, his wife and various other persons.

A decree in that suit was made on the 16th day of January, 1930, decreeing and establishing the priorities of liens against the real estate of Mathew W. Stribling, who was required to pay certain sums of money within ten days from the rising of the court. In default of such payment, the 168 acre tract of land was decreed to be sold to pay off and discharge the liens. The tract sold to Rose Nibert was excluded from such decree.

In accordance with the decree of the sale, the special commissioners, thereby appointed, sold the land, described as 160 acres, to the Citizens National Bank of Point Pleasant, West Virginia, and after confirmation of the sale, conveyed the same to the purchaser by deed

bearing date the 21st day of March, 1930. The bank conveyed the land to Walter H. Lewis, Jr., and Dorthy Jane Lewis, (now Dorthy Lewis Polan), by deed bearing date the 12th day of December, 1940.

The plaintiffs allege in their bill of complaint that Mathew W. Stribling did not own the fee simple title in the 168 acre tract of land, but only owned a life estate therein, under the *fourth item* of Otis F. Stribling's will. Mathew W. Stribling, the devisee named in the fourth item of the will, and the grantee named in the deed from Virginia C. Stribling, and others, died intestate in the year, 1951, without children surviving him.

The plaintiffs allege that the heirs of Otis F. Stribling were not determined until the death of the life tenant, Mathew W. Stribling; that such heirs so ascertained are Cornelia K. Stribling Johnson, William Matthew Stribling, Allen Neal Stribling, Donna M. Stribling Shaltoches and Jewell C. Stribling Barnett, children of William N. Stribling, and the plaintiff, Otis S. Young, a son of Catharine Stribling Young; that William N. Stribling and Catharine S. Young, having predeceased Mathew W. Stribling, the children of William N. Stribling, deceased, are the true owners in fee simple of a one-half interest in the 168 acre tract; and, that Otis S. Young, the plaintiff herein, is the owner of the other one-half undivided interest in fee simple.

The plaintiffs allege that the heirs of William N. Stribling, together with their spouses, and the widow of William N. Stribling, have given unto him, by appropriate written instrument, the sole and exclusive right to purchase a one-half undivided interest in the 168 acre tract of land.

Plaintiffs allege that the heirs of Otis F. Stribling, determinable as of the date of the death of Mathew W. Stribling, have not conveyed their estate in the 168 acre tract of land; and, that the deed executed by Virginia C. Stribling, the widow of Otis F. Stribling, Catharine

S. Young and James Young, her husband, and William N. Stribling to Mathew W. Stribling, bearing date the 14th day of August, 1912, did not affect the rights of the true heirs of Otis F. Stribling, nor were such heirs parties to the suit of *Hayman* v. *Matthew W. Stribling,* and others.

Plaintiffs aver that the defendants are receiving profits from the land, and that they will continue to receive them unless prevented by the order of the trial court. The prayer of the bill is substantially as follows: That the deed bearing date the 4th day of August, 1912, from Virginia C. Stribling, and others, to Mathew W. Stribling; that the deed from Mathew W. Stribling and Mary Stribling, his wife, to Rose Nibert; that all of the several decrees made in the suit of *Hayman* v. *Matthew W. Stribling,* and others, affecting the title to the land; that the deed from Charles E. Hogg and E. J. Somerville, special commissioners, to the Citizens National Bank of Point Pleasant, West Virginia; and, the deed bearing date the 12th day of December, 1940, from the Citizens National Bank to Walter H. Lewis, Jr., and Dorthy Lewis Polan, be set aside and held for naught and declared to be null and void as clouds upon the title.

The final decree discloses that the widow of William N. Stribling, Okey Stribling, Allen Neal Stribling, William M. Stribling, Jewell C. Barnett and her husband, Donna M. Stribling Shaltoches and her husband, Cornelia K. Stribling Johnson and her husband, moved that they be made parties plaintiff in the bill of complaint. The trial court, by the final decree, made such persons parties plaintiff, and all the plaintiffs then "waived any right, title, interest or claim in and to the portion" of the 168 acre tract of land thereof conveyed to the Board of Education, Hannan District, predecessors in title to the Board of Education, Mason County, West Virginia, as well as any right, title, interest or claim in and to the land conveyed to the defendant, Rose Nibert.

The only controversy now existing as to the title of

the 168 acre tract of land is between Otis S. Young, his alleged co-heirs, and the defendants Walter H. Lewis, Jr., Dorthy Lewis Polan and Lake Polan, Jr.

If the contention of the plaintiff is upheld that the heirs of Otis F. Stribling are determinable as of the date of the death of Mathew W. Stribling, the life tenant, the decree of the trial court should be affirmed. On the contrary, if the three defendants are right in their contention that the heirs of Otis F. Stribling should be determined as of the date of his death, the plaintiffs would have no estate in the 168 acre tract, and the decree of the trial court must be reversed.

We do not think that the will of Otis F. Stribling calls for construction, since the language employed by him in his will is plain and free of any ambiguity. We apply the language of Judge Snyder to the entire will, as well as the *fourth item*: "The provision or clause of the will now under consideration is expressed in plain, unambiguous terms. The objects of the testator's *bound* [bounty] as well as the subjects disposed of are fully identified. According to the rules before stated, it seems to me, there is very little room for any attempt to construe this will. To undertake to do so, can be little more than to repeat its provisions." *Couch* v. *Eastham*, 29 W. Va. 784, 788, 3 S. E. 23, 26. Notwithstanding the foregoing, we think that this Court is required to give effect to the will.

By reason of the infinite variety of words and combinations of words used in wills, precise precedents are seldom found. The paramount rule in construing or giving effect to a will is that the intention of the testator must be given effect, unless that intention violates some positive rule of law. *Hinton* v. *Milburn*, 23 W. Va. 166; *Couch* v. *Eastham, supra; Bentley et al.* v. *Ash et al.*, 59 W. Va. 641, 646, 53 S. E. 636; *Behrens* v. *Baumann*, 66 W. Va. 56, 66 S. E. 5; *Woodbridge* v. *Woodbridge*, 88 W. Va. 187, 106 S. E. 437; *Davis* v. *Davis*, 118 W. Va.

328, 190 S. E. 331; *Brookover* v. *Grimm,* 118 W. Va. 227, 190 S. E. 697; *Harris* v. *Eskridge,* 124 W. Va. 283, 20 S. E. 2d 465; *Hedrick* v. *Hedrick,* 125 W. Va. 702, 712, 25 S. E. 2d 872; *Ball* v. *Ball,* 136 W. Va. 852, 69 S. E. 2d 55, 59. See *In Re: Conley,* 122 W. Va. 559, 12 S. E. 2d 49. In the case of *McCreery* v. *Johnston,* 90 W. Va. 80, 110 S. E. 464, the rule is stated as follows: The paramount rule in construing or giving effect to a will is that the intention of the testator must be given effect, unless that intention violates some positive rule of law *or public policy.* See *Cresap* v. *Cresap,* 34 W. Va. 310, 324, 12 S. E. 527, where it is stated: "' * * * the plain intent of the testator, as evinced by the language of his will, must prevail; if that intent may be carried into effect without violating some deeper principle of public policy; * * * '".

In ascertaining the intention of the testator, the entire will should be considered. *Hays* v. *Freshwater,* 47 W. Va. 217, 34 S. E. 831; *Woodbridge* v. *Woodbridge, supra; Dingess* v. *Drake,* 135 W. Va. 502, 64 S. E. 2d 601, 604. The intent expressed by the words of the will governs, and courts may not conjecture or surmise what the testator intended to express. *Wills* v. *Foltz,* 61 W. Va. 262, 56 S. E. 473; *Neal* v. *Hamilton Co.,* 70 W. Va. 250, 73 S. E. 971.

Equity favors vesting of estates, "'Devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated by the will.'" *Tavenner* v. *Baughman,* 129 W. Va. 783, 798, 41 S. E. 2d 703. See *Suter* v. *Suter,* 68 W. Va. 690, 692, 70 S. E. 705; *Stout* v. *Clifford,* 70 W. Va. 178, 73 S. E. 316; *Bland* v. *Davisson,* 77 W. Va. 557, 561, 88 S. E. 1021; *Cowherd* v. *Fleming et al.,* 84 W. Va. 227, 232, 100 S. E. 84; *Patton* v. *Corley,* 107 W. Va. 318, 320, 148 S. E. 120; *Burche* v. *Neal,* 107 W. Va. 559, 149 S. E. 611.

"* * * The heir is not to be disinherited without an express devise or necessary implication; such implication

importing, not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed." 2 Jarman, Sixth Edition, Bigelow, star page 1654, page 771; *Baer* v. *Forbes*, 48 W. Va. 208, 36 S. E. 364.

To hold that the testator's heirs are to be determined as of the date of the death of Mathew W. Stribling, the life tenant, would result in an abeyance of the fee during the time elapsing between the death of testator and the death of his son, Mathew W. Stribling. The common law inveighs against the theory of abeyance of the fee. Blackstone states the principle in the following language: "The fee simple or inheritance of lands and tenements is generally vested and resides in some person or other; * * *." Book II Chitty's Blackstone Commentaries, page 107. "It is a maxim of the common law, that a fee cannot be in abeyance. It rests upon reasons that now have no existence, and it is not now of universal application. But if it were, being a common-law maxim, it must yield to statutory provisions inconsistent with it; * * *." *Wallach et al.* v. *Van Riswick*, 92 U. S. 202, 212, 23 L. Ed. 473. See *Ill. Central Railroad* v. *Bosworth*, 133 U. S. 92, 100; 33 L. Ed. 550, 10 S. C. Rep. 231. The doctrine of abeyance of the fee is critically analyzed in the following language: " * * * Hence, as under the rule above the fee simple was declared 'out', and as nobody knew its 'whereabouts', it was said to be in *abeyance* — a confession of ignorance sometimes covered by Latin, declaring that the fee simple was *in nubibus* (in the clouds), or *in gremio legis* (in the bosom of the law)." Notes on Real Property, Graves, page 209, Section 180. See Minor on Real Property, Second Edition, Vol. I, Ribble, §142 and §346; I Washburn on Real Property, Sixth Edition, §127. The theory of abeyance of the fee loses some of its force when we consider Code, 36-1-9, reading in part as follows: "Any interest in or claim to real estate * * * may be lawfully conveyed or devised. Any estate in such property may be made to commence *in futuro*, by

conveyance *inter vivos,* in like manner as by will, and any estate which would be good as an executory devise or bequest, shall be good if created by conveyance *inter vivos.*"

The principle favoring the early vesting of estates and the disfavor with which the common law looks upon the abeyance of the fee, lends support to the thought that the identity of the heirs of Otis F. Stribling should be determined as of the date of his death.

If it is held that the heirs of Otis F. Stribling are to be determined as of the date of his death, the life tenant, Mathew W. Stribling is one of those heirs. Where the life tenant is the only heir of the testator, such situation would be more persuasive as was indicated *a arguendo* in the case of *Trust Co.* v. *Stewart,* 128 W. Va. 703, 37 S. E. 563. But the testator in the instant case had two other children who would likewise be his heirs upon his decease, which lessens the force of such argument. Where the first taker is also one of the heirs of the testator has been considered as a factor in some decisions holding that the heirs are determinable subsequent to the death of a testator. See *Taylor* v. *Albree,* (Mass.), 56 N. E. 2d 904; *Francisco* v. *Citizens Trust Co.,* (N. J.), 29 A. 2d 320, which was affirmed 29 A. 2d 884. See however, *Old Colony Trust Co.* v. *Sullivan,* (Mass.) 167 N. E. 648; *In Re Whiteside's Estate,* (Pa.) 153 A. 728. The significance of the fact that Mathew W. Stribling was one of the heirs as of the date of the testator's death is lessened when it is considered that he was the life tenant and the remainder in fee to his children would not have vested until he died, had he left children.

Looking at the entire will, and giving all of its parts the effect according to the plain and unambiguous language, we think that the *fourth item* of Otis F. Stribling's will created a base or qualified fee in his heirs, limited after the life estate of Mathew W. Stribling and a remainder in fee to vest in the children of Mathew W.

Stribling, had he left any children surviving. But no children survived him, and therefore, the base or qualified fee vested in the heirs of Otis F. Stribling; and became a fee simple estate at the death of Mathew W. Stribling.

A base or qualified fee is transmissible by deed, before the happening of the contingency upon which the fee is limited. *Kidwell* v. *Rogers,* 103 W. Va. 272, 137 S. E. 5; *Stephenson* v. *Cavendish,* 134 W. Va. 361, 59 S. E. 2d 459; *Dingess* v. *Drake, supra.* It follows that the widow and heirs who conveyed the estate which they owned to Mathew W. Stribling, conveyed to him a base or qualified fee, subject to be divested upon Mathew W. Stribling leaving children. But no divestiture ever took place.

A will takes effect " * * * as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." Code, 41-3-1. The general rule in construing or giving effect to a will has been stated as follows: " * * * In the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of surrounding circumstances, the class described as testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator." 49 A.L.R. Annotation, page 178.

This rule, though sometimes criticised, has been enforced by this Court. *Tharp* v. *Tharp,* 131 W. Va. 529, 48 S. E. 2d 793. See *Martin, Admr. etc.* v. *Kirby, Admr. etc. & als.,* 11 Grattan 67, decided 1854. The foregoing seems to state the general rule. See 3 Page on Wills, Lifetime Edition, §1054; Annotations, 127 A.L.R. 602, et seq.; 169 A.L.R. 207, et seq.; III Restatement of the Law, Property, page 1706, et seq.; *Allison* v. *Allison's*

*Ex'rs.,* (Va.) 44 S. E. 904; *Stokes* v. *Van Wyck,* (Va.) 3 S. E. 387; *Welch* v. *Blanchard,* (Mass.), 94 N. E. 811.

In *Schaeffer* v. *Schaeffer,* 54 W. Va. 681, 46 S. E. 150, the general rule is criticised, which criticism may have been merited under the facts of that case. Following the *Schaeffer* case, the case of *National Bank* v. *Kenney,* 113 W. Va. 890, 170 S. E. 177, held: "Words of survivorship contained in a will are not necessarily to be applied as of the date of the death of the testator, but are to be applied in accord with the intention of the testator as gathered from a consideration of the entire will." We do not think that the syllabus point of the *Kenney* case just quoted impinges upon, or is in any way contrary to the general rule we have just quoted. The Kenney case rests solely upon the clear and plain intent of the testator, thus giving effect to the paramount rule hereinabove stated. In *Trust Co.* v. *Stewart, supra,* the *Kenney* case was followed. The second point of the syllabus in the Stewart case reads as follows: "Ordinarily a will takes effect as of the date of testator's death, but if the language thereof shows that the testator intended that a testamentary disposition therein made should be effective at a different date, the intention of testator controls, if no positive rule of law is thereby violated." Again, we think the statement in the *Stewart* case conforms with the general rule in giving effect to the controlling principle, relative to the intention of the testator. We likewise think that the *Stewart* case in nowise lessens the full and complete effect of the rule. See *Ball* v. *Ball, supra.*

In the case at bar, there is no language in the will of Otis F. Stribling which indicates that it was his intention that his heirs should be determined as of the date of the death of Mathew W. Stribling. Nor is there any latent ambiguity in such will so as to permit the introduction of parol evidence to show testator's intention. *Hobbs, Exr.* v. *Brenneman et al.,* 94 W. Va. 320, 118 S. E. 546.

Therefore, the general rule is applied to the devise contained in *item number 4* of the will. We are of opinion

that Otis F. Stribling's heirs should be determined as of the date of his death; that his devise to Mathew W. Stribling, as hereinabove stated, created a life estate in Mathew W. Stribling; a base or qualified fee in the heirs of Otis F. Stribling then in being, which fee was subject to be divested upon the birth of children born to Mathew W. Stribling.

The widow of Otis F. Stribling, his daughter and his other son, shortly after the death of testator, united in a deed to Mathew W. Stribling. We think that deed vested in Mathew W. Stribling a base or qualified fee which was subject to be divested upon his leaving children surviving. The life tenant having left no children, the base fee created by the will became a fee simple. The sale in a creditor's suit against Mathew W. Stribling, of course, only vested a base fee in the purchaser at that judicial sale, since Mathew W. Stribling was at the time of such sale, living; but he having thereafter died without leaving children, the estate was then converted into a fee simple which the defendants, Walter H. Lewis, Jr. and Dorthy Lewis Polan, now own.

The Circuit Court of Mason County erred in overruling the demurrer to the plaintiff's bill of complaint, and accordingly, we hold that this record, as it now stands, discloses that Walter H. Lewis and Dorthy L. Polan are vested with the estate in the land acquired by the bank at the judicial sale, subject to the dower rights of Lake Polan, Jr. We note that the deed from the bank to Walter H. Lewis, Jr. and Dorthy Jane Lewis, now Dorthy Lewis Polan, contains a covenant of special warranty. Therefore, the decree of the Circuit Court of Mason County is reversed and this suit is remanded to that Court, with directions that the demurrer to the bill of complaint be sustained; plaintiffs be accorded leave to amend the same, if they are so advised, and in the absence of such amendment, that the bill of complaint be dismissed.

*Reversed and remanded;*
*with directions.*